IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| BETH MCGILL, TINA GIPSON, KARI NUENKE, EMILY NUENKE, and REBEL MOORE, *individually, and on behalf of all similarly situated individuals*,<br><br>Plaintiffs,<br><br>v.<br><br>NASHVILLE TENNESSEE VENTURES, INC., a/k/a NASHVILLE VENTURES, d/b/a HELP 4 TIMESHARE OWNERS, INTEGRITY SOLUTIONS GROUP, LLC, *a New Mexico Limited Liability Company*, JOHN STEVEN HUFFMAN, and JOHN PRESTON THOMPSON<br><br>Defendants. | NO. 3:19-cv-00922<br><br>JUDGE CAMPBELL<br>MAGISTRATE JUDGE HOLMES |

## MEMORANDUM

Pending before the Court is Defendants' Motion for Summary Judgment. (Doc. No. 62). In support of the Motion, Defendants filed a memorandum of law and a statement of undisputed material facts (Doc. Nos. 63 and 64). Plaintiffs Beth McGill and Rebel Moore responded to the motion for summary judgment and to the statement of undisputed material facts (Doc. Nos. 71 and 72), to which Defendants filed a Reply (Doc. No. 74). For the reasons stated herein, Defendants' Motion for Summary Judgment will be **DENIED**.

Also pending before the Court is Defendants' Motion to Decertify Conditionally Certified Collective Action, which is supported by a memorandum of law. (Doc. Nos. 66 and 67). Plaintiffs filed a response in which they assert that Defendants' motion to decertify is moot because "the

matter is no longer a collective action" "due to a settlement being reached for the claims of all Opt-in Plaintiffs and [all but two of the] Named Plaintiffs." (Doc. No. 73 at 3 (citing Joint Case Resolution Status Report, Doc. No. 60)). The parties agree the matter will not move forward as a collective action. However, they disagree as to whether Defendants' motion to decertify class is moot or should be granted. The difference between these results is a distinction without a difference. Decertification would merely result in the dismissal of any opt-in plaintiffs, of which there are none. As Plaintiffs have not and will not seek final certification and there are no opt-in plaintiffs, the Court finds the motion to decertify is **MOOT**.

The Court proceeds to consideration of Defendants' Motion for Summary Judgment on the claims asserted by Plaintiffs Beth McGill and Rebel Moore.

## I. FACTUAL BACKGROUND

Plaintiffs filed this action as a purported collective action pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b). (Compl., Doc. No. 1). During the relevant period of time, Defendants Nashville Tennessee Ventures ("Nashville Ventures") and Integrity Solutions Group, LLC ("Integrity Solutions") provided "timeshare exit services" which they describe as "assisting a timeshare owner in exiting or cancelling their timeshare ownership." (Doc. No. 72, ¶¶ 1-2; Doc. No. 63 at 4). Defendants Steven Huffman and Preston Thompson are co-owners of Nashville Ventures and former co-owners of Integrity Solutions.[1] (*Id.*, ¶¶ 3-4).

Plaintiff Beth McGill worked for Nashville Ventures as a Case Manager beginning in May 2015. (*Id.* ¶ 5). McGill became Executive Branch Director in 2016 and resigned in 2018. (*Id.*). As

---

[1] Defendants contend Integrity Solutions is a separate legal entity that did not employ McGill or Moore. (Doc. No. 72, ¶¶ 6, 8). Plaintiffs assert Integrity Solutions is the alter-ego of Nashville Ventures. (*Id.*). As this issue is not relevant to the pending motion, it will not be considered at this juncture.

2

Executive Branch Director, McGill was paid an hourly rate of at least $17.50 per hour. (*Id*. ¶ 9). She received compensation for working forty hours per week every week regardless of the number of hours works. (*Id*., ¶ 10). McGill also earned a bonus from cancellations obtained by Case Managers. (*Id*., ¶ 11).

When she was promoted from Case Manager to Executive Branch Director, McGill continued performing her Case Manager duties in addition to her new responsibilities. (McGill Dep., 71-1 at 14). During McGill's tenure as Executive Branch Director, there were approximately eight Case Managers and three Case Assistants at any given time. (*Id*., ¶ 13). As Executive Branch Director, McGill interviewed job candidates and obtained hiring approval from Thompson, who approved all of the candidates she recommended. (McGill Dep., Doc. No. 71-1 at 20-22). McGill was also responsible for recording and processing the number of hours worked by Case Managers, managing attendance, approving time off, maintaining personnel files, and issuing disciplinary writeups.[2] (*Id*., ¶¶ 12, 17; McGill Dep., Doc. No. 71-1 at 34). On at least one occasion, acting on instructions from Thompson, she informed a Case Manager that her employment was being terminated. (Doc. No. 72, ¶ 18). She also was responsible for managing client and vendor communications, tracking the cancellation of clients' timeshares handled by Case Managers, and generally helping Case Managers with any issues they had with client files. (Doc. No. 72, ¶ 12).

Case Managers' time was tracked via email. (*Id*., ¶ 20). Each day, Case Managers sent McGill emails stating their arrival and departure times. (*Id*.). McGill then transcribed or compiled

---

[2] McGill states that she was not the only person responsible for disciplinary issues pertaining to Case Managers. (Doc. No. 72 at 16).

3

these numbers.³ (*Id.*, ¶ 21). McGill states that, even if the emails showed work in excess of forty hours in a workweek, she was instructed to process the payroll for forty hours. (*Id.*, McGill Dep., Doc. No. 71-1 at 35). She stated that Defendants had a policy of only paying for forty hours per week. (McGill Dep., Doc. No. 71-1 at 30).

Rebel Moore worked as a Case Manager for Nashville Ventures from December 2016 through October 2018. (Doc. No. 72, ¶ 7). She was supervised by McGill. (*Id.*, ¶ 23). Moore states that when she was hired, she was informed that the company would not pay overtime. (Moore Dep., Doc. No. 65-3 at 75-76). She claims Huffman and Thompson said the Case Managers should be able to complete their work in forty hours per week and that if they could not, the company would hire someone else. (Doc. No. 72, ¶¶ 30-31; Moore Dep., Doc. No. 65-3 at 76). Moore claims the Case Managers were responsible for more work than could realistically be completed in forty hours per week, and were essentially given the "choice" to work overtime without pay to complete the work or be fired. (*Id.* at 76-82). Moore estimates that she would stay at work past 5:00 p.m. three to four days per week and sometimes came in on Saturdays. (Doc. No. 72 at ¶ 27; Moore Dep., Doc. No. 65-3 at 68-70). How long she would stay past 5:00 p.m. depended on the amount of work she had to do. Moore testified that Thompson knew she was working after hours because she told him about her late hours and he was also in the office working late. (Moore Dep., Doc. No. 65-3 at 147).

---

³ McGill objects to Defendants' characterization of her keeping track of hours worked as "processing payroll," stating that she "merely transcribed numbers as she was instructed." (Doc. No. 72, ¶ 12).

At some point while McGill was Executive Branch Manager, Nashville Ventures put in place an employee handbook.[4] (Doc. No. 72, ¶ 32). The Handbook instructed that "[n]o overtime will be allowed without prior approval from a manager. If agreed, overtime is calculated at time and a half." (Doc. No. 32-1 at PageID# 241).

McGill claims to have worked ten to twenty hours of overtime per week. (McGill Decl., Doc. No. 28-3, ¶ 11). Moore claims to have worked ten to fifteen hours of overtime per week. (Moore Decl., Doc. No. 28-3, ¶ 9). They both allege Defendants are liable for unpaid overtime under the FLSA.

## II. STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party bringing the summary judgment motion has the initial burden of informing the Court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts. *Rodgers v. Banks,* 344 F.3d 587, 595 (6th Cir. 2003). The moving party may satisfy this burden by presenting affirmative evidence that negates an element of the non-moving party's claim or by demonstrating an absence of evidence to support the nonmoving party's case. *Id.*

---

[4] The parties have not provided an exact date the handbook was put in place, but agree it was put in place sometime during McGill's tenure as Executive Branch Director. (Doc. No. 78, ¶ 32). The Employee Handbook and an associated email, suggest the Employee Handbook was put in place in June 2018. (Doc. No. 32-1 at PageID# 234, 261). Assuming the Handbook was put in place in mid-June 2018 (the date of the email), Moore states that she did not work for Defendants at the time the Handbook was implemented, or, at most, she was working for Nashville Ventures for seven or eight days after it was implemented. (Doc. No. 72, ¶ 36 (citing Moore Dep., Doc. No. 65-3 at 129-130)).

5

In evaluating a motion for summary judgment, the court views the facts in the light most favorable for the nonmoving party and draws all reasonable inferences in favor of the nonmoving party. *Bible Believers v. Wayne Cty., Mich.*, 805 F.3d 228, 242 (6th Cir. 2015); *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003). The Court does not weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Rather, the Court determines whether sufficient evidence has been presented to make the issue of material fact a proper jury question. *Id.* The mere scintilla of evidence in support of the nonmoving party's position is insufficient to survive summary judgment; instead, there must be evidence of which the jury could reasonably find for the nonmoving party. *Rodgers* 344 F.3d at 595.

### III. ANALYSIS

Under the FLSA, non-exempt employees who work more than forty hours per week are entitled to overtime compensation of at least one and one-half times their regular rate of pay. 29 U.S.C. § 207(a)(1).

**A. Executive Exemption**

The requirement to pay overtime wages does not apply to individuals "employed in a bona fide executive, administrative, or professional capacity." 29 U.S.C. § 213(a)(1). Defendants contend McGill was a "bona fide executive" and therefore is not entitled to overtime pay. (Doc. No. 63 at 9-11).

The FLSA overtime exemptions are affirmative defenses for which the employer bears the burden of proof. *Bacon v. Eaton Corp.*, 565 F. App'x 437, 439 (6th Cir. 2014). In construing the exemptions, the Court gives them a "fair (rather than a 'narrow') interpretation." *Encino*

6

*Motorcars, LLC v. Navarro*, 138 S.Ct. 1134, 1142 (2018); *Holt v. City of Battle Creek*, 925 F.3d 905, 910-11 (6th Cir. 2019) (stating that *Encino* requires courts to apply a "fair reading" to the FLSA overtime wage exemptions).

An employee employed in a "bona fide executive capacity" is any employee:

> (1) Compensated on a salary basis pursuant to 29 C.F.R. § 541.600 at a rate of not less than $455.00 per week …;[5] (2) Whose primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof; (3) Who customarily and regularly directs the work of two or more employees; and (4) Who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight.

29 C.F.R. § 541.100(a).

Of these requirements, the parties agree that McGill directed the work of two or more employees. The remaining requirements are disputed.

1. <u>Compensated on a Salary Basis</u>

An employee meets the salary basis test if the employee "regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of the employee's compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed." 29 C.F.R. § 541.602(a). "An exempt employee's earnings may be calculated on an hourly, a daily, or a shift basis, without losing the exemption … if the employment arrangement also includes a guarantee of at least the minimum weekly required amount paid on a salary basis regardless of the number of hours, days, or shifts worked, and a

---

5  Effective January 1, 2020, the salary threshold increased to $684.00 per week. *See* 29 C.F.R. § 541.100(a) (as amended Sept. 27, 2019). The salary threshold was $455.00 per week during McGill's employment as Executive Branch Director.

7

reasonable relationship exists between the guaranteed amount and the amount actually earned." 29 C.F.R. § 541.604(b).

Defendants argue there is no dispute of material fact that McGill was paid for working forty hours a week during every pay period she was employed as Executive Branch Director regardless of the number of hours she actually worked. They contend this meets the salary basis test.

Plaintiffs argue that Defendants admit McGill was an hourly-paid employee. (Doc. No. 71 at 4 (citing Defendants' Answer, Doc. No. 24, ¶ 26 (admitting McGill was employed "as an hourly-paid Executive Branch Director and Case Manager"))). Plaintiffs add that Defendants deposition testimony also suggests that they considered McGill an hourly employee. For example, when asked why McGill was not paid overtime on a particular week, Thompson responded, "I mean, you'd have to ask Beth I don't know why she wouldn't want to pay herself the time." (*Id*. (citing Thompson Dep., Doc. No. 65-2 at 38)).

Construing the evidence in the light most favorable to Plaintiffs, there are questions of fact regarding whether McGill was paid on a salary basis. Moreover, while it is undisputed that McGill was compensated for working forty hours a week during every pay period she was employed as Executive Branch Director, it is not clear that there existed an employment arrangement whereby she was guaranteed this amount.

    2.    <u>Primary Duty is Management</u>

To qualify for an exemption, an employee's "primary duty" must be "management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof." 29 C.F.R. § 541.100(a)(2). "Primary duty" is defined as the "principal,

8

Case 3:19-cv-00922   Document 76   Filed 06/03/22   Page 8 of 15 PageID #: 937

main, major, or most important duty that the employee performs." 29 C.F.R. § 540.700(a). The regulations instruct that determination of an employee's primary duty must be based on "all the facts in a particular case, with the major emphasis on the character of the employee's job as whole." *Id*. The Court's consideration includes: "the relative importance of exempt duties as compared with other types of duties; the amount of time spent performing exempt work; the employee's relative freedom from direct supervision; and the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee." *Id*.

Defendants argue that McGill's primary duty was management, noting that she processed payroll, managed Case Managers and Case Assistants, was involved in hiring, and tracking time, attendance, performance, and productivity, and was the primary contact for the company's vendors and clients. (Doc. No. 63 at 10-11). Defendants add that Thompson and Huffman were not regularly present in the office. (*Id*. at 11).

Plaintiffs argue that Defendants have not established that McGill's primary job duties were managerial because, although she did undertake additional responsibilities in her role as Executive Branch Director, McGill otherwise had the same job duties as Case Managers. (Doc. No. 71 at 6).

The parties have pointed to no evidence in the record indicating what amount of time Plaintiff spend on managerial duties as compared to case management duties or from which the Court can discern the relative importance of her various duties. While there appears to be no dispute that McGill performed managerial duties, there are questions of material fact regarding whether these were her "primary" duties.

9

### 3. Authority to Hire or Fire

The final element at issue under the executive exemption is McGill's authority with regard to the hiring or firing of other employees. As stated above, the Regulations provide that an exempt employee is one "[w]ho has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion, or any other change of status of other employees are given particular weight." 29 C.F.R. § 541.100(a). To determine whether an employee's suggestions and recommendations are given "particular weight," the Court considers: "whether it is part of the employee's job duties to make such suggestions or recommendations; the frequency such suggestions and recommendations are made or requested; and the frequency with which the employee's suggestions or recommendations are relied upon." 29 C.F.R. § 541.105.

Defendants argue McGill had the authority to hire and fire based on McGill's testimony that she interviewed and hired at least nine Case Managers and was responsible for communicating notice of termination to one employee. (Doc. No. 63 at 7).

Plaintiffs contend McGill did not have the independent authority to hire or fire anyone and that the ultimate decisions came from Thompson. (Doc. No. 71 at 5). Plaintiffs add that there is no evidence McGill was involved in the decision to terminate any employees or that her suggestions and recommendations were given particular weight. (*Id*.).

This final element is written in the disjunctive. Accordingly, McGill need not have had authority over all personnel decisions. It is sufficient for her to have had authority to "hire *or* fire other employees *or* whose suggestions *or* recommendations as to the hiring, firing … *or* any other change of status are given particular weight." In light of the disjunctive wording of this element,

10

the evidence shows this element has been satisfied. McGill testified that she interviewed and hired the Case Managers, subject to final approval by Thompson, who approved all of the candidates she recommended. Even taken in the light most favorable to Plaintiffs, this establishes that McGill's recommendations as to the hiring of other employees was given "particular weight."

However, because there are disputes of material fact as to the first two elements, Defendants have not demonstrated that no reasonable jury could conclude McGill was a nonexempt employee. Accordingly, summary judgment is not warranted on these grounds.

## B. Sufficient Evidence of Unpaid Work

Defendants argue Plaintiffs have not offered sufficient evidence to establish they performed work for which they were not properly compensated. Defendants contend that Plaintiffs estimates regarding the amount of overtime worked are "nothing more than conclusory testimony" and are, therefore, insufficient to create a factual dispute to defeat summary judgment."

An employee who claims she is entitled to overtime pay has the burden of proving she performed work for which she was not properly compensated. *Viet v. Le*, 951 F.3d 818, 822 (6th Cir. 2020) (citing *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946)). In *Viet*, the Sixth Circuit considered "the kind of evidence employees must present to create a jury question over whether they worked overtime." *Id*. at 820. Conclusory statements will not suffice. *Id*. at 823. "The party must identify 'specific facts, as opposed to general allegations,' establishing the element." *Id*. (citing 10 A Charles Alan Wright, et al., *Federal Practice and Procedure* § 2727.2 at 501 (4th ed. 2016)). "Generally, if an employee has a specific work schedule exceeding 40 hours, court have found the testimony sufficient." *Id*. "If, by contrast, the employee testifies generally that the employee worked overtime without providing details to support this claim,

courts have found that the testimony falls short." *Id*.

Here, Plaintiffs have provided sufficient testimony to support their claims that they worked overtime. It is undisputed that regular office hours were 9:00 a.m. to 5:00 p.m. Monday through Thursday and 9:00 a.m. to 4:00 p.m. on Fridays. (Doc. No. 73 at 34). Employees would have been entitled to overtime pay for anything more than one hour in addition to regular office hours. Plaintiffs stated that they always worked during the regular office hours, as they were required to do, and that they also regularly worked before and after these hours. Moore testified that she worked after 5:00 p.m. three to four days a week. (Doc. No. 27, ¶ 27; Moore Dep., Doc. No. 65-3 at 142). In addition, she provided a specific breakdown of the work done each week and how long it took her to complete each task. (Moore Decl., Doc. No. 28-3, ¶ 12). McGill also testified that, in addition to working during scheduled office hours, she regularly came into the office early, stayed late, and took work home. (McGill Decl., Doc. No. 28-3, ¶ 11; McGill Dep., Doc. No. 71-1 at 48-50). McGill testified that when working on things at home afterhours, Case Managers would email files to their personal accounts to do work on their personal computers at home and then email the completed filed back to the Nashville Ventures email address. (McGill Dep., Doc. No. 71-1 at 50-51). Moore provided photographs of her home computer displaying dates and time during which work-related files were modified. (Moore Dep., Doc. No. 65-3 at 209, and Ex. 6 (showing files modified before and after work hours and on weekends)).

On this record, the Court finds that Plaintiffs have provided sufficient evidence from which a reasonable jury could conclude they worked more than forty hours per week.

## C. Failure to Report Time

Defendants next argue that they are not liable for overtime because they did not know Plaintiffs were engaging in overtime work.

"An employee must show that the employer knew or should have known that he was working overtime … an employer cannot satisfy an obligation that it has no reason to think exists." *Wood v. Mid-Am. Mgmt. Corp.*, 192 F. App'x 378, 381 (6th Cir. 2006). "[I]f an employer establishes a reasonable process for an employee to report uncompensated work time the employer is not liable for non-payment if the employee fails to follow the established process." *White v. Baptist Mem. Health Care Corp.*, 699 F.3d 869, 876 (6th Cir. 2012). There are two exceptions to this general rule: first, where employers prevent the employees from reporting overtime; second, where the employers are otherwise notified of the employees' unreported work. *See Craig v Bridges Bros. Trucking, LLC*, 823 F.3d 382, 388 (6th Cir. 2016). "[I]f an 'employer knows or has reason to believe' that an employee 'is continuing to work' in excess of forty hours a week, 'the time is working time' and must be compensated at time-and-a-half, even if the extra work performed was 'not requested' or even officially prohibited." *Id.* (quoting 29 C.F.R. § 785.11).

Defendants argue they are not liable for overtime because the time was never reported on the payroll, which was processed by McGill, and because Moore never requested approval to work more than forty hours. (Doc. No. 63 at 14 (citing McGill Dep., Doc. No. 70-1 at 35 and Moore Dep., Doc. No. 65-3 at 130)). In other words, Defendants claim that they did not know Plaintiffs were working overtime and, therefore, cannot be liable for the failure to pay them for such work.

Plaintiffs contend there is evidence from which a reasonable jury could conclude that Defendant did not have a reasonable process for reporting overtime and that Defendants, in fact,

13

knew that the Case Managers were performing work for which they were not being paid. Plaintiffs point to McGill's testimony that Defendants made it clear that no overtime would be paid, such that reporting overtime was futile and her testimony that Defendants knew she and other employees were taking home case files (*i.e.*, working in addition to their regular office hours) to keep up with work. (Doc. No. 71 at 9-10 (citing McGill Dep., Doc. No. 65-3 at 31, 72-73)). Plaintiffs also point to Moore's testimony that she spoke with the Defendants about the amount of time it was taking to complete assignments and they told her she would have to "stay and get the work done… if that means you have to stay after, then that means you have to stay after." (*Id*. at 10 (citing Moore Dep., Doc. No. 65-3 at 144-45)).

Plaintiffs have provided sufficient evidence to establish questions of fact regarding whether Defendants knew Plaintiffs were performing work for which they were not compensated and whether Defendants had a reasonable process for reporting overtime.

**D. Willfulness**

Finally, Defendants argue Plaintiffs cannot establish a willful violation of the FLSA.[6] A violation of the FLSA is "willful" if "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *McLaughlin v. Richland Shoe Co*., 486 U.S. 128, 133 (1988). The employee claiming violation of the FLSA bears the burden of proving willfulness. *Bennett v. Highland Graphics, Inc*., No. 3:14-cv-02408, 2016 WL 6071998, at *11 (M.D. Tenn. Oct. 17, 2016). A willfulness determination is a question of fact

---

[6] The FLSA contains a two-year statute of limitations to recover unpaid overtime. 29 U.S.C. § 255(a); *Elwell v. Univ. Hosps. Home Care Servs.*, 276 F.3d 832, 842 (6th Cir. 2002). The statute extends the filing period to three years if the defendant's violation was determined to be willful. 29 U.S.C. § 255(a).

that should be decided as a matter of law only when there is no legally sufficient evidentiary basis for a reasonably jury to find for the nonmoving party. *Stansbury v. Faulkner*, 443 F. Supp. 3d 918, 935 (W.D. Tenn. 2020).

Plaintiffs have provided evidence from which a reasonable jury could conclude that Defendants acted knowingly or with reckless disregard when they allowed Plaintiffs to work after hours and did not to pay them for the work. For example, Moore testified that Defendants knew she was working after regular business hours to complete her work and that they told her they would not pay for more than forty hours per week. (Moore Dep., Doc. No. 65-3 at 147). McGill testified that Defendants told her they would not pay overtime. (McGill Decl., Doc. No. 28-3, ¶ 15). Accordingly, summary judgment is not warranted as to this aspect of Plaintiffs' claim.

## IV. CONCLUSION

For the reasons stated above, Defendants' Motion for Summary Judgment (Doc. No. 62) will be DENIED. Defendant's Motion to Decertify Conditionally Certified Collective (Doc. No. 66) is MOOT. An appropriate Order will enter.

_____
WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE